**SO ORDERED.**

**SIGNED this 22 day of October, 2020.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**

| | |
|---|---|
| **KENNETH H. ROBERSON, JR.** | **CASE NO. 18-05432-5-JNC** |
| **VICKIE H. ROBERSON** | **CHAPTER 12** |
| **DEBTORS** | |

### MEMORANDUM OPINION

In its order of September 9, 2020 (Dkt. 164; the "Order"), the court denied the relief sought in the Motion for Private Sale (Dkt. 153; the "Motion") filed August 20, 2020, by Kenneth H. Roberson, Jr. and Vickie H. Roberson (the "Debtors"). The Motion sought approval of the private sale of two tracts of agricultural real property owned by the Debtors pursuant to 11 U.S.C. § 363(f) known as the "Bunting Farm" for $155,000 and the "Johnson Farm" for $190,000 (collectively, the "Properties") to identified parties. The Motion also sought to reinstate the automatic stay of 11 U.S.C. § 362(a) as to the Properties to halt a pending state court foreclosure action and pending auction filed by creditor, Rabo AgriFinance, LLC ("Rabo"), after a default in the Debtors' confirmed chapter 12 plan. _See_ the Affidavit of Default filed January 24, 2020 (Dkt. 129). On

September 2, 2020, Rabo filed its response (Dkt. 161; the "Response") objecting to approval of the proposed section 363 sales and reinstatement of the stay. At the conclusion of the hearing on the Motion and Response, held September 3, 2020 in Greenville, North Carolina, the court announced its decision in open court and the Order was subsequently entered. This Memorandum Opinion provides a further explanation of the basis of the court's ruling.

## BACKGROUND

The Debtors filed a voluntary petition for relief under chapter 12 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 18, 2018 (the "Petition Date"). They filed a proposed chapter 12 plan on February 25, 2019 (Dkt. 57). Objections to the plan were filed by multiple creditors, including Rabo. The Debtors agreed to modifications that were subsequently incorporated into the chapter 12 plan, and a confirmation order was entered on June 21, 2019 (Dkt. 92; the "Confirmed Plan").

Rabo is the holder of an allowed secured claim (Proof of Claim No. 18) originally in excess of $3 million with a present remaining principal balance of $2,831,285.42. Class 10 of Article V of the Confirmed Plan addresses its claim.[1] Under the terms of the Confirmed Plan, Rabo's claim would be paid in conjunction with lease payments received from the related chapter 11 case of K&J Farms, LLC ("K&J"), Case No. 17-01480-5-JNC, the operational arm of the Debtors' farming organization, and the chapter 11 plan of reorganization confirmation order in that case (17-01480-5-JNC, Dkt. 288; the "K&J Chapter 11 Plan"). At issue in the Motion are two of eleven tracts of real property secured by a Deed of Trust dated July 23, 2015 in favor of Rabo and recorded in the Martin County Register of Deeds in Deed Book 0Z-25, at Page 365 (the "Deed of Trust") that secure its claim in this case and the K&J case. At the time the Debtors filed their chapter 12

---

[1] Rabo's Claims were treated as Class 6 in the K&J Farms, LLC chapter 11 plan of reorganization.

petition, they still owned nine of these tracts. Subsequent to filing the petition, consistent with the terms of the Confirmed Plan and the K&J Chapter 11 Plan, and with Rabo's consent, the Debtors have sold three tracts.

The Confirmed Plan treatment for Rabo in Class 10 provides that a consent order entered in the K&J chapter 11 case (17-01480-5-JNC, Dkt. 350; the "K&J Consent Order") sets the stipulated treatment of its claim in this case as well.[2] The terms of the K&J Consent Order are incorporated into the Confirmed Plan in Class 10, providing in pertinent part:

> c. The remaining Marketed Property (as defined by the Confirmed Plan) shall be sold by March 1, 2020. If the remaining Marketed Property is not sold by March 1, 2020, then Rabo, at its sole discretion, may require K&J, the Debtors, and related parties to voluntarily deed the remaining unsold Marketed Property to Rabo (or its designee). In such an instance, Rabo shall credit the principal balance of its allowed secured claim by 90% of the remaining Marketed Property's appraised value, according to the appraisal performed by David Hill, Certified General Appraiser, dated June 27, 2017, or any updates thereof.
>
> ….
>
> i. If the Debtors and/or K&J default in the terms of the K&J Consent Order referenced herein, then Rabo may foreclose on its collateral and/or otherwise collect on its loan in accordance with the terms of its loan documents, the confirmed plan, and the Stipulation. Any automatic stay that may be in place preventing such shall automatically lift, without the need for a motion or request by Rabo, and Rabo shall be entitled to an order confirming such upon the filing of an affidavit of default with the Court. The Debtor shall not contest or oppose such but if there is a dispute as to whether default has occurred, the Debtor may seek a judicial determination.

Section II, paragraph 17 of the K&J Chapter 11 Plan defined the "Marketed Collateral" as:

---

[2] Paragraph 13.g. of the K&J Consent Order states:

Kenneth H. Robertson, Jr. and Vickie H. Roberson the ("Robersons") have filed a chapter 12 petition for relief in the bankruptcy court for the Eastern District of North Carolina, case number 18-05432-5-JNC. The Robersons, the Debtor, and Rabo agree that the treatment of Rabo's claim under the Robersons' chapter 12 plan shall be identical to the treatment of Rabo's loans hereunder and as provided for under the Stipulation, provided, however, that the Robersons shall not receive a discharge for any liability owing to Rabo until all of the payments under the Stipulation shall have been completed.

3

> [F]our (4) parcels of real estate, being known as the "Beverly Farm" located in Pitt County and comprising 36.5 acres, more or less, and bearing PID number 81425; the "Staton Farm" located in Martin County and comprising 70.5 acres, more or less, and bearing PID numbers 0702563 and 0702921; and the "Ross Farm" located in Martin County and comprising two (2) tracts, 378 acres, more or less, and bearing PID numbers 0600487 and 0600482. The Marketed Collateral is not property of the estate. The Marketed Property is owned by Kenneth Roberson, Jr., and wife, Vickie Roberson; Kenneth Roberson III, and wife, Starla Roberson; and Josh Roberson ….

Further, Article VIII of the Confirmed Plan states in pertinent part:

> 4. <u>Sales Free of Interests</u>: The Debtors shall be authorized to apply to the Court for such sales of farmland or farm equipment free of liens and interests as may be necessary to effectuate the terms of this Plan, or may otherwise be in the best interest of the estate, as authorized by §§ 363 and 1206.
>
> ….
>
> 6. <u>Vesting of Property in the Debtors</u>: Upon confirmation, title to the assets of the Debtors shall be retained by and revest in the Debtors free and clear of all claims, liens, security, and equitable interests, including liens which represent under-secured amounts of scheduled secured claimants, except as may be otherwise provided by this Plan. The Order confirming the Plan shall be a judicial determination of the discharge of the liabilities of and claims against the Debtors except as may be otherwise provided for in this Plan.

The Confirmed Plan required that K&J make a $50,000.00 payment to Rabo under the K&J Chapter 11 Plan by August 1, 2019.[3] K&J failed to meet that deadline, thereby defaulting under the K&J Chapter 11 Plan and causing the Debtors to default under the Confirmed Plan in this case. K&J's chapter 11 case was dismissed on March 16, 2020 due to its plan payment defaults.[4] As a result, Rabo filed the Affidavit of Default (Dkt. 129) and properly commenced foreclosure proceedings on the Properties on April 15, 2020 in the Superior Court of Martin County, North Carolina. At the foreclosure hearing held June 4, 2020, an order of foreclosure was entered by the

---

[3] Article V, Class 10 paragraph d. of the Confirmed Plan states in part: "In addition to the payments required under (e) below, a payment from K&J in the amount of $50,000.00 shall be due on or before August 1, 2019."

[4] K&J refiled a chapter 12 petition three days later, on March 19, 2020, Case No. 20-01239-5-JNC.

4

Martin County Clerk of Superior Court. The foreclosure sale of the Properties was scheduled for 10:00 a.m. on September 9, 2020, at the Martin County Courthouse in Williamston, North Carolina.

The Motion was filed in an effort to forestall the foreclosure sale by obtaining permission to sell the Properties at private sale to identified buyers. No provision for the acceptance of counteroffers or a bidding process was provided. The proposed buyers verbally agreed to lease the Properties back to the Debtors or K&J so that farming operations could continue on the land during 2020 and 2021. The Motion further sought to have the order declare that any sale of the Properties would be made free and clear of any and all liens and interests, including those in favor of Rabo, with the liens attaching to the sale proceeds. It made no provision for Rabo to credit bid its unchallenged secured claim in competition with the proposed buyers. It also sought reinstatement of the automatic stay of section 362 against the Properties in order to prevent title from passing to the high bidder at the foreclosure sale before the contemplated section 363 sales could be closed. If approved, the section 363 sales and stay reimposition would prevent Rabo from completing its foreclosure and deprive it of the benefit of bidding its debt in protection of its secured claim.

In the Response, Rabo contended that: (a) the court lacks subject matter jurisdiction to approve the Properties sales free and clear of Rabo's interest; (b) section 363(f) is not applicable because the Properties are not property of the estate; (c) the Debtors do not satisfy any of the conditions in section 363(f); (d) Rabo is entitled to credit bid to purchase the Properties; (e) the Confirmed Plan cannot be modified to reimpose the stay; and (f) the proposed buyers are not harmed by denial of the Motion, as they can attend and purchase the Properties at the state court foreclosure sale scheduled approximately one week after the hearing on this matter.

## JURISDICTION

This court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina. The matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this court has the jurisdiction to hear and determine. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## DISCUSSION

The Motion for private sale is made pursuant to 11 U.S.C. §§ 363(f) and 105. In the alternative, in open court the Debtors added 11 U.S.C. § 1206 as a statutory sale vehicle. The Motion also sought to reinstate the automatic stay of 11 U.S.C. § 362(a), which had been lifted upon the Confirmed Plan default, as to the Properties in order to delay the pending Rabo foreclosure and provide a window to close the two private sales. The lynchpin of this dispute is whether a debtor-in-possession has authority to sell property pursuant to 11 U.S.C. § 1206 or if that authority is limited to the chapter 12 trustee and, regardless, whether the automatic stay of 11 U.S.C. § 362 can be reimposed under these circumstances and by this procedure.

1. **Private Sale Free and Clear of Liens and Interests**

   a. <u>Subject Matter Jurisdiction – Property of the Estate</u>

As a preliminary matter, Rabo asserts that the court does not have subject matter jurisdiction over the Properties sufficient to authorize sales free and clear of its interest. Specifically, Rabo contends that section 363(f) is not operational once a chapter 12 plan is confirmed if the plan did not specifically provide for the sale of the property post-confirmation. Here, neither the Confirmed Plan in this case nor the related K&J Chapter 11 Plan specifically

provided for the sale of the Bunting Farm or the Johnson Farm. Other farmland was designated for sale in the Confirmed Plan (defined as the "Marketed Collateral"), but it contemplated that the Debtors would retain the Bunting Farm and the Johnson Farm, and rent the same to K&J to raise crops in subsequent years. Additionally, Rabo asserts that upon plan confirmation, the retained farmland did not remain property of the estate pursuant to section 1227(b) of the Bankruptcy Code and Article VIII, paragraph 6 of the Confirmed Plan, because those assets had revested back to the Debtors. The Debtors assert that the court retains jurisdiction over this matter because Article VIII, paragraph 4 of the Confirmed Plan reserves and permits the Debtors to move for post-confirmation sales under 11 U.S.C. §§ 363(f) and 1206.

Rabo's jurisdiction argument fails for two reasons. First, the Confirmed Plan, at paragraph 3 of Article VIII, provides for the general retention of jurisdiction by the court over the case pursuant to 11 U.S.C. §§ 105 and 1227, including jurisdiction "[t]o determine all controversies and disputes that may arise in connection with the Chapter 12 case and in connection with the interpretation and implementation of the Plan … [and] such other matters as may property [sic] and necessarily be brought before the Court." The matter before the court is a controversy, and the Debtors cannot give good title to third parties on sales of real estate without resolving the controversy.[5]

Second, and more specifically, any revesting under section 1227(b) is tempered by the retention of rights contained in paragraph 4 of Article VIII of the Confirmed Plan as quoted above. That section specifically reserved jurisdiction over any subsequent motions to sell estate property under sections 363(f) and 1206, not just the Marketed Collateral designated in the Confirmed Plan. The Motion at hand "fits like a glove" into that retained jurisdiction provision.

---

[5] As a practical matter, no title insurance title company would insure the transfer of real estate title without a bankruptcy court's approval under circumstances of plan default and secured creditor objection to the sale.

Further, the commencement of a bankruptcy case creates an "estate," which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). When a chapter 12 plan is confirmed, "*[e]xcept as otherwise provided in the plan* or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1227(b) (emphasis added). Here, the Confirmed Plan provides that "otherwise" exception in the two paragraphs cited above, both generally and specifically. Article VIII, paragraph 6 of the Confirmed Plan does state that at confirmation, title to the Debtors' assets "shall be retained by and revest in the Debtors free and clear of all claims, liens, security, and equitable interests, including liens which represent under-secured amounts of scheduled secured claimants, except as may be otherwise provided by this Plan." Rabo argues, therefore, that under paragraph 6 and section 1227(b) of the Bankruptcy Code, all of the Debtors' property re-vested in the Debtors on June 29, 2019 when the plan was confirmed in this case. In essence, Rabo argues that paragraph 6 trumps paragraph 4, with no role for court intervention.

Paragraph 6 is inconsistent with paragraph 4, which gives the Debtors the right to sell property under sections 363(f) and 1206. Sales under sections 363(f) and 1206 cannot occur without court approval. Neither the Confirmed Plan nor the Bankruptcy Code replace the court; good title cannot pass under sections 363(f) and 1206 without the filing of a motion under Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure. If Rabo's position is correct, paragraph 4 of the Confirmed Plan would have no purpose, which is a ludicrous result.

In response, Rabo maintains that paragraph 4 is limited to sales of the "Marketed Properties" as defined in the K&J Chapter 11 Plan. This case, however, is not the K&J case, and K&J does not own the real property subject to the Deed of Trust, cannot sign a deed to transfer the properties, and does not have standing to file a motion for sale in the bankruptcy court; only the

8

Debtors and the trustee, with the permission of this court, can accomplish those sales. Paragraph 4 specifically reserves the Debtors' right to apply for sales of "farmland or farm equipment" under sections 363(f) and 1206. While paragraph 4 did not mention the Bunting Farm or Johnson Farm by name, neither did it limit applicability to the "Marketed Properties;" there is no mention of or limitation to "Marketed Properties" in paragraph 4.

Because paragraph 4 specifically gives the Debtors the right to apply to the court for the sale of any tract of the Debtors' farmland under sections 363(f) and 1206, paragraph 6 cannot be interpreted as revesting estate assets completely back to the Debtors at confirmation with no retention of jurisdiction while the case remains open, particularly after a default has occurred. It is an elementary provision of statutory and contract interpretation that specific terms control over general terms. *See Woods-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974) ("[W]hen general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics."); *Morales v. TWA*, 504 U.S. 374, 384, 112 S. Ct. 2031, 2037, 119 L. Ed. 2d 157, 168 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). Because this case is still open and pending, and the language in paragraph 4 of Article VIII in the Confirmed Plan did not revest the Properties, Rules 6004 and 9014 prevent the Properties from being sold without court review and approval. The Properties therefore remain within the subject matter jurisdiction of the court.

  b. <u>11 U.S.C. § 363(f) Conditions</u>

Notwithstanding the retention of jurisdiction, the Order denied approval of the proposed sales. Rabo has correctly asserted that none of the enumerated conditions of section 363(f) are satisfied. The Motion as submitted is made pursuant to 11 U.S.C. § 363(f),[6] which provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Subsection (b) of the statute authorizes the sale of property of the estate outside of the ordinary course of business, and subsection (c) authorizes sale in the ordinary course of business. *See* 11 U.S.C. § 363(b)-(c). Here, it is undisputed that the proposed sales of the Properties are outside of the ordinary course of business. Thus, only subsection (b) applies.

At the hearing, Rabo maintained, and the Debtors could not dispute, that none of the section 363(f) conditions were met. First, the Debtors have not cited, in the Motion or at hearing, any applicable nonbankruptcy law that would permit a sale free and clear of Rabo's interest. Second, Rabo made clear in the Response and at the hearing that it does not consent to the Debtors' proposed sales, even if given the right to credit bid. Third, it is uncontroverted that the sale price of the Properties does not exceed the amount of Rabo's lien exceeding $2.8 million. Fourth, there

---

[6] Although the Motion cited only section 363(f), the court allowed the Debtors to argue for relief under section 1206 at the hearing over Rabo's objection. The section 1206 issue is discussed below.

10

is no bona fide dispute as to the validity of Rabo's first priority lien. Finally, no viable grounds were presented that would compel Rabo to accept a money satisfaction of its interest. Therefore, although the court has subject matter jurisdiction to consider the sale pursuant to section 363(f), it declines to do so because the Debtors have not satisfied the conditions outlined in that statute.

    c.   11 U.S.C. § 1206 – Trustee Sales

In the alternative, the Debtors assert that 11 U.S.C. § 1206 provides the authority to sell the Properties free and clear of liens and interests without Rabo's consent because the section 363(f) requirements do not apply to section 1206 sales. Rabo counters that section 1206 does not provide authority for the Debtors' proposed sales because the statute only applies to sales by the chapter 12 trustee, and here, the trustee is not a party to the Motion; he did not move for or seek approval of the two proposed private sales. In response, the Debtors maintain that 11 U.S.C. §§ 1206 and 1203 allow debtors to step into the shoes of a trustee for sales in chapter 12 cases.[7]

Section 1206 of the Bankruptcy Code grants a chapter 12 *trustee* broad power to sell farmland, equipment, and other farm assets free and clear of third-party interests "even if none of the grounds listed in section 363(f) is satisfied." 3 Collier on Bankruptcy P 363.06[11] (16th ed. 2020). Section 1206 sales free of the section 363(f) conditions allows farmers the flexibility of selling assets "not needed for the reorganization prior to confirmation without the consent of the secured creditors." 8 Collier on Bankruptcy P 1206.01 (16th ed. 2020); *see also Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R. 25, 45 (B.A.P. 9th Cir. 2008) ("Section 1206 modifies § 363(f) so the debtor can sell assets not necessary to the reorganization without the secured creditor's consent.").

---

[7] Additionally, Rabo argued that, like section 363(f), real estate to be sold under section 1206 must be property of the estate. As established above, the Properties are property of the estate.

11

However, the resulting lassitude to secured creditors' rights is not unfettered; first, the trustee must determine that the proposed free and clear sale is fair under the circumstances. Unlike section 363(f) sales, which a debtor can move for and seek, the authority to seek approval of a sale of property under section 1206 is held exclusively by the chapter 12 trustee. *See* 8 Collier on Bankruptcy P 1206.01[2] (16th ed. 2020) ("The authority granted under section 1206 was provided to the trustee rather than to the debtor."); *In re PW, LLC*, 391 B.R. at 45 (noting that section 1206 would be unnecessary if section 363(f) already granted the trustee a right to sell free and clear of third-party interests). Section 1206 does not extend that authority to a debtor. *See* 8 Collier on Bankruptcy P 1206.01[2] (16th ed. 2020) ("The reference in section 1206 to the trustee cannot be read as a reference to the debtor as debtor in possession since the rights of the debtor and the rights of the trustee in a chapter 12 case are set forth separately on a section-by-section basis.").

Although section 1203 of the Bankruptcy Code provides that the debtor-in-possession in a chapter 12 case can exercise all the rights of a trustee serving in a chapter 11 case, it "does not grant the debtor in possession the rights of a trustee serving in a chapter 12 case." *Id.* at n.5. A chapter 11 debtor-in-possession has no rights under section 1206 since that provision is not applicable to chapter 11 cases. Instead, a chapter 11 debtor-in-possession, and therefore chapter 12 debtors, are limited to proceeding under section 363(f). *See* 8 Collier on Bankruptcy P 1206.01[2] (16th ed. 2020) (explaining that a debtor can move to sell property free and clear of liens under section 363(f) even if "the debtor cannot convince the trustee to authorize a sale under section 1206 and apply to the court for approval of the sale"); 8 Collier on Bankruptcy P 1203.02[1] (16th ed. 2020) ("The debtor in possession may use, sell, or lease property of the estate pursuant to section 363."). For a sale to be authorized under section 1206, a trustee must file the proposed sale motion. Here, the trustee did not file the Motion, and under the pressing time circumstances,

12

he could not fairly join the Motion at the hearing without prior notice. Because the trustee is not a party to the Motion, the proposed sales may not proceed and be authorized under 11 U.S.C. § 1206.

    d.   Rabo's Right to Credit Bid

Even if the proposed sales could proceed under section 1206, Rabo would retain its right to credit bid under 11 U.S.C. § 363(k). Section 363(k) allows a creditor with a lien on the property being sold to bid at such sale and to offset its claim against the purchase price. 11 U.S.C. § 363(k). Although the section 363(f) requirements need not be met under section 1206 to sell property free and clear without the creditor's consent, section 1206 does not take away a secured creditor's right under section 363(k) to credit bid at the sale. Section 1206 "makes clear that . . . the holders of secured claims would have the right to bid at the sale to the extent permitted under section 363(k)." 8 Collier on Bankruptcy P 1206.01[1] (16th 2020). "The holder of a lien on the property to be sold will be entitled to protect its interest in the property being sold by bidding in the amount of its lien at the sale." *Id.*

Here, Rabo, by virtue of its lien against the Properties, has a near absolute right to credit bid at sale, subject only to (a) a bona fide dispute as to the validity of its secured claim and (b) covering the costs of sale under section 506(c) of the Bankruptcy Code. *See generally In re L.L. Murphrey Co.*, No. 12-03837-8-JRL, 2013 Bankr. LEXIS 2318, 2013 WL 2451368 (Bankr. E.D.N.C. June 6, 2013); *see also Econ. Stone Midstream Fuel, LLC v. M/V A.M. Thompson*, No. 4:08-CV-127-SA-DAS, 2009 U.S. Dist. LEXIS 76975, *4 (N.D. Miss. Aug. 27, 2009) (court allowed secured creditor to credit bid up to the amount of its claim on the condition that it first pay the costs of sale); *Private Capital Grp., LLC v. Harris*, 273 Ore. App. 529, 535-36, 363 P.3d 502, 505 (Or. Ct. App. 2015) (noting that a creditor can credit bid up to an amount equaling the sum of money awards, costs and fees, and the costs of sale). The bankruptcy court should only deny

a section 363(k) credit bid right "when equitable concerns give it cause." *In re RML Dev., Inc.*, 528 B.R. 150, 155-56 (Bankr. W.D. Tenn. 2014). A denial of credit bid rights "should be the extraordinary exception and not the norm." *Id*.

No circumstances warranting the extraordinary relief of denying Rabo the right to credit bid its secured debt was presented in the Motion or at hearing. The Motion, as drafted, does not seek competing bids, makes no mention of Rabo's credit bid right, and by its emergency timing nature, seeks approval only of the posted bids and no others. The sales proposed in the Motion violate section 363(k) of the Bankruptcy Code. Finally, even with its right to credit bid orally clarified at the hearing,[8] Rabo would not consent to the sales or withdraw its objection.[9] No procedures for a competitive bidding process were proposed at the hearing, and given the close proximity of the foreclosure sale, proposing and noticing such a process now would be fruitless.

### 2. Re-imposing the Automatic Stay of 11 U.S.C. § 362(a)

The Motion also seeks to reinstate the automatic stay of 11 U.S.C. § 362(a) as to the Properties pursuant to the court's equitable powers granted under 11 U.S.C. § 105(a). If granted, the stay reimposition would freeze Rabo's pending state court foreclosure action prior to the foreclosure auction, rendering the defaults in the Confirmed Plan and the K&J Confirmed Plan meaningless. At the hearing and in its Response, Rabo asserted that in order for the automatic stay to be reimposed, the Debtors must modify the terms of the Confirmed Plan under 11 U.S.C. § 1229. Further, a previously modified and lifted automatic stay can only be reimposed by an injunction, which requires the filing of an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001.

### a. Modification of a Plan Post-Confirmation

---

[8] Counsel for the Debtors conceded at the hearing that Rabo would be entitled to credit bid at any sale conducted pursuant to sections 363 and 1206.
[9] The point would be moot unless the state court foreclosure proceeding was enjoined and halted as well.

14

Section 1229 of the Bankruptcy Code governs modification of a chapter 12 plan after confirmation, and provides that a confirmed plan may be modified only to:

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) provide for the payment of a claim described in section 1232(a) that arose after the date on which the petition was filed.

11 U.S.C. § 1229(a).

The Confirmed Plan provides that upon default by the Debtors or K&J under their respective plans, the section 362 stay in place would "automatically lift, without the need for a motion or request by Rabo" so that it could proceed with foreclosure of its collateral.[10] As Rabo correctly asserted, the Debtors defaulted when K&J failed to make the $50,000.00 rent payment required by the Confirmed Plan. The lifted stay resulting from this default was not hidden and was no surprise to the Debtors. The Confirmed Plan also states that in the event of default, the Debtors would not contest or oppose a foreclosure by Rabo.[11]

Self-effectuating stay modifications upon default contained in the terms of the Confirmed Plan are permissible in plans of reorganization. *See In re DB Capital Holdings, LLC*, 454 B.R. 804, 816 (Bankr. D. Colo. 2011) (noting that prepetition stay waivers are enforced where part of a confirmed plan). The provisions of a confirmed plan "bind the debtor." 11 U.S.C. § 1227(a); *In re*

---

[10] Per Article V, Class 10, section i of the Confirmed Plan, quoted at page 3 above.

[11] Article V, Class 10, section i of the Confirmed Plan states: "The Debtor shall not contest or oppose [foreclosure] but if there is a dispute as to whether default has occurred, the Debtor may seek a judicial determination."

*Cooper*, 94 B.R. 550, 552 (Bankr. S.D. Ill. 1989) ("Confirmation is *res judicata* as to those issues which could and should have been raised prior to or in connection with confirmation."). Because the Confirmed Plan lifts the stay and includes the agreement not to contest the foreclosure, those provisions remain enforceable absent plan modification.

By the express terms of section 1229 of the Bankruptcy Code, modifications are only allowed in the four circumstances listed above, none of which are applicable to the current facts, and the Motion does not seek section 1229 relief in any event. Consequently, the Debtors are not permitted to modify the Confirmed Plan and reimpose the stay after it has been properly lifted.

      b.   <u>Federal Rule of Bankruptcy Procedure 7001 – Adversary Proceedings</u>

If the stay cannot be reimposed by modifying the Confirmed Plan, the Debtors only other alternative is injunctive relief. The automatic stay of 11 U.S.C. § 362 is similar to a temporary injunction. *In re Bryant*, 296 B.R. 516 (Bankr. D. Colo. 2003). Once the section 362 stay has been lifted, a debtor can only seek to reimpose the stay by obtaining a new injunction pursuant to the bankruptcy court's authority under 11 U.S.C. § 105(a). *In re Wishon*, 410 B.R. 295, 307 (Bankr. D. Or. 2009). Section 105(a) of the Bankruptcy Code gives the bankruptcy court authority to "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and "authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction." *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986). However, the powers granted by section 105(a) "may be exercised only in a manner consistent with the provisions of the Bankruptcy Code." *Id.* at 1308.

Federal Rule of Bankruptcy Procedure 7001(7) provides that "a proceeding to obtain *an injunction or other equitable relief*" (emphasis added) must be brought through an adversary proceeding, except when a plan of reorganization provides for such relief. The Confirmed Plan

here does not provide for that relief. "Courts have uniformly held that a request to reimpose the automatic stay" under section 105(a) constitutes a plea for injunctive relief under Rule 7001(7), "which requires the filing of an adversary proceeding." *State Bank of Southern Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1079 (10th Cir. 1996); *In re Price*, 577 B.R. 643, 658 (Bankr. E.D.N.C. 2017); *In re Bryant*, 296 B.R. 516, 519–21 (Bankr. D. Colo. 2003) (noting that it is not appropriate for the court to consider reimposition of the automatic stay under section 105 as a contested matter and is instead appropriate, if at all, only in an adversary proceeding).[12]

By requesting that the automatic stay be reimposed under section 105(a), the Debtors are asking the court to set aside its own order and materially affect Rabo's rights.[13]  However, in the present procedural posture of this case, no authority exists in the Bankruptcy Code to reinstate the automatic stay. This does not mean that the court may not, in considering a properly filed and served adversary proceeding complaint, grant reimposition of a stay in the form of injunctive relief, including preventing a party who obtained relief from stay from proceeding with its foreclosure action. *In re Terramar Min. Corp.*, 70 B.R. 875, 877 (Bankr. M.D. Fla. 1987).  Because Federal Rule of Bankruptcy Procedure 7001(7) requires the commencement of an adversary proceeding as a condition to obtaining injunctive relief, and the Motion is a contested matter under Federal Rule of Bankruptcy Procedure 9014 rather than an adversary proceeding, the reimposition of stay relief presented to the court was procedurally defective, and the  request cannot be granted.

Assuming for the moment that the Debtors had brought an adversary proceeding, the court would not reimpose the stay under the circumstances of this case for the reasons articulated in

---

[12] Alternatively, a motion under Fed. R. Civ. P. 60(b) to vacate an order lifting the automatic stay does not require the filing of an adversary proceeding since it does not request injunctive relief. *See In re Timmons*, 479 B.R. 597, 606 (Bankr. N.D. Ala. 2012). However, such a motion is not before the court.

[13] As discussed above, Rabo points to the terms of the Confirmed Plan that prohibit the Debtors from contesting a foreclosure by Rabo. By seeking to reimpose the automatic stay, the Debtors are contesting the foreclosure sale, in violation of the Confirmed Plan.

Section 1 above. As a matter of public interest, a bankruptcy court "is not inclined to neutralize and/or vitiate" its final orders "barring extraordinary circumstances." *In re Bryant*, 296 B.R. at 520. "The strong policy and purpose of the bankruptcy laws in ensuring 'prompt and effectual administration and settlement of the estate'" requires that debtors "act promptly to preserve [their] rights." *Id.* at 369 (quoting *In re Frasier*, 294 B.R. 362, 369 (Bankr. D. Colo. 2003)). Here, the foreclosure proceeding was filed in state court on April 15, 2020, and the Debtors have been aware of its pendency throughout the ensuing five months. The default leading to the foreclosure occurred even earlier. In filing and proceeding with the foreclosure action in state court, Rabo relied on the sanctity of prior orders of this court in the form of two confirmed plans of reorganization. The Debtors had ample time to file an adversary proceeding seeking injunctive relief if warranted, yet they waited until mere days before the foreclosure auction to file the Motion. This dilatory conduct led to the emergency nature of the Motion. The court will not permit the present procedural deficiency to be cured by past inaction. Moreover, the proposed buyers may attend the foreclosure and bid on the Properties. Thus, neither the buyers nor the Debtors are prejudiced by denial of the Motion, allowing the foreclosure to proceed as scheduled.

### 3. K&J's Crop Rights

Under North Carolina law, if a tenant farmer loses possession of the land on which the crops grow, for example, if the land is foreclosed, the farmer is entitled to finish raising and harvesting the crops. *See* N.C. Gen. Stat. Ann. § 42-23 ("If on account of illness or any other good cause, the tenant is unable to harvest all the crops grown on lands leased by him for any year prior to the termination of his lease contract … he shall have a right to return to the premises … at any time prior to December thirty-first of said year, for the purpose only of harvesting and dividing the remaining crops so ungathered."). However, the lessor or its assigns hold an agricultural lien on

the crops until any unpaid rents are paid. *See* N.C. Gen. Stat. Ann. § 42-15; *In re Grandfather Mountain Ltd. P'ship*, No. 2:96CV85, 1997 WL 34740256, at *9 (M.D.N.C. Jan. 29, 1997) ("Crops that are unsevered at the time of default, as with rents that are accrued and yet uncollected, remain part of the land, subject to the mortgage lien (unless the parties agreed otherwise).").

Here, K&J leases the Properties from the Debtors for its farming operations and has crops currently growing on the Properties. Therefore, notwithstanding the foreclosure, it is uncontested, and specifically agreed to by Rabo, that K&J will retain its rights to finish raising and harvesting or cutting the crops currently growing on the Properties for the 2020 farm year. K&J must, however, pay Rabo any rent due and owing upon harvesting the crops in the normal course. To the extent otherwise existing under North Carolina law, Rabo retains its rights to collect land rent from K&J.

## CONCLUSION

The Motion remains denied. The proposed private sales were not approved, and the automatic stay was not reinstated. The foreclosure sale was permitted to proceed as scheduled. K&J is entitled to finish raising, and then harvest, crops on the Properties, subject to Rabo's rent collection rights under state law.

**END OF DOCUMENT**